IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

TERRY ARLINE DAVIDSON                                  PLAINTIFF

vs.                                Civil No. 6:10-cv-06008

MICHAEL J. ASTRUE                                        DEFENDANT
Commissioner, Social Security Administration

**MEMORANDUM OPINION**

Terry Arline Davidson ("Plaintiff") brings this action pursuant to § 205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2010), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Act. The parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. ECF No. 5.[1] Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**1. Background:**

Plaintiff filed an application for SSI on October 31, 2007. (Tr. 70-74). In her application, Plaintiff alleged she was disabled due to chronic pain and vision problems. (Tr. 83, 111, 120). Plaintiff alleged on onset date of October 1, 2006. (Tr. 70). This application was denied initially and upon reconsideration. (Tr. 39-40).

Thereafter, Plaintiff requested an administrative hearing on her application, and this hearing

---

[1] The docket numbers for this case are referenced by the designation "ECF No. ____" The transcript pages for this case are referenced by the designation "Tr."

request was granted. (Tr. 48-62). An administrative hearing was held on April 28, 2009 in Hot Springs, Arkansas. (Tr. 22-38). Plaintiff was present and was represented by counsel, Charles Padgham, at this hearing. *Id.* Plaintiff and Vocational Expert ("VE") David O'Neal testified at this hearing. *Id.* On the date of this hearing, Plaintiff was forty-two (42) years old, which is defined as a "younger person" under 20 C.F.R. § 404.1563(c) (2008), and had completed the sixth grade in school. (Tr. 25).

On July 6, 2009, the ALJ entered an unfavorable decision denying Plaintiff's application for SSI. (Tr. 11-21). In this decision, the ALJ determined Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since October 22, 2007, her application date. (Tr. 13, Finding 1). The ALJ determined Plaintiff had the following severe impairments: chronic back pain and degenerative joint disease in her lumbar spine; arthralgias; aphake and corneal scar of the left eye; chronic open angle glaucoma in her right eye; and obesity. (Tr. 13, Finding 2). The ALJ also determined none of Plaintiff's impairments, singularly or in combination, met the Listing of Impairments in Appendix 1 to Subpart P of Regulations No. 4 ("Listings"). (Tr. 13-14, Finding 3).

In this decision, the ALJ evaluated Plaintiff's subjective complaints and determined her RFC. (Tr. 14-20, Finding 4). First, the ALJ evaluated Plaintiff's subjective complaints and found her claimed limitations were not entirely credible. *Id.* Second, the ALJ determined, based upon his review of Plaintiff's subjective complaints, the hearing testimony, and the evidence in the record, that Plaintiff retained the RFC to perform the following:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b). The claimant can occasionally lift no more than 20 pounds and 10 pounds frequently; sit about 6 hours per 8 hour workday; and stand/walk 6 hours per 8 hour workday. In addition, the claimant would be limited to only occasional climbing, balancing, stooping, kneeling, crouching and crawling and work that did not require

good depth perception or good binocular vision.

(Tr. 14-20, Finding 4).

The ALJ evaluated Plaintiff's PRW ("PRW"). (Tr. 20, Finding 5). The ALJ determined Plaintiff's PRW included work as a painter's helper (very heavy, unskilled). *Id.* Based upon her RFC, the ALJ determined Plaintiff was unable to perform her PRW. *Id.* The ALJ also determined, however, that there was other work Plaintiff could perform in the national economy, considering her age, education, work experience, and RFC. (Tr. 20-21, Finding 9). The ALJ based this finding upon the testimony of the VE. *Id.*

The VE testified, considering all Plaintiff's vocational factors, a hypothetical person would be able to perform the requirements of representative occupations such as poultry deboner with approximately 500 such jobs in Arkansas and 5,100 such jobs in the national economy; fast food worker with approximately 14,000 such jobs in Arkansas and 2,000,000 such jobs in the national economy; and laundry and related worker with approximately 500 such jobs in Arkansas and 15,000 such jobs in the national economy. (Tr. 21). Based upon this testimony, the ALJ determined Plaintiff had not been under a disability, as defined by the Act, since October 22, 2007, her application date, through July 6, 2009, the ALJ's decision date. (Tr. 21, Finding 10).

Thereafter, Plaintiff requested that the Appeals Council review the ALJ's unfavorable decision. (Tr. 4). *See* 20 C.F.R. § 404.968. On January 11, 2010, the Appeals Council declined to review this unfavorable decision. (Tr. 1-3). On February 10, 2010, Plaintiff filed the present appeal. ECF No. 1. The Parties consented to the jurisdiction of this Court on February 24, 2010. ECF No. 5. Both Parties have filed appeal briefs. ECF Nos. 7-8. This case is now ready for decision.

**2. Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g) (2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the

familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity (RFC) to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *See Cox,* 160 F.3d at 1206;  20 C.F.R. §§ 404.1520(a)-(f).  The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

3. **Discussion:**

In her appeal brief, Plaintiff claims the ALJ's disability determination is not supported by substantial evidence in the record.  ECF No. 7.  Specifically, Plaintiff claims (A) the ALJ erred when he found the claimant had the RFC to perform light work and (B) the ALJ erred when he stated the claimant was not a credible witness. *Id.*  In response, Defendant claims the ALJ properly evaluated Plaintiff's RFC.  ECF No. 8 at 4-10.  Defendant also claims the ALJ properly evaluated Plaintiff's subjective complaints of disabling pain and discomfort and discounted them for legally-sufficient reasons. *Id.* at 10-14.  This Court will address both Plaintiff's arguments for reversal.

    A.    **RFC Determination**

Plaintiff claims the ALJ erred by finding she retained the RFC for a wide range of light work. ECF No. 7 at 3-8.  A claimant's RFC is what he or she can do despite his or her limitations.  20 C.F.R.

§ 404.1545. The ALJ has the responsibility to determine a claimant's RFC based upon all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations. *See Tellez v. Barnhart,* 403 F.3d 953, 957 (8th Cir. 2005). The claimant, however, has the burden to prove his or her RFC. *See Baldwin v. Barnhart,* 349 F.3d 549, 556 (8th Cir. 2003).

In support of this claim and to meet her burden of establishing she is unable to perform a wide range of light work, Plaintiff references her osteoarthritis and vision problems and argues that they preclude her from performing a wide range of light work. *Id.* Plaintiff does not, however, reference any specific medical records establishing she has such a limitation. *Id.* Because Plaintiff has referenced no medical records in support of her claim, this Court will independently review the relevant medical records to determine whether Plaintiff has met her burden of establishing she is unable to perform a wide range of light work.

Upon review of these medical records, Plaintiff has not established her osteoarthritis or her vision problems cause her to be unable to perform a wide range of light work. First, her osteoarthritis should be considered. On August 9, 2006, Plaintiff complained to medical personnel at the Baptist Health Medical Center about bilateral knee pain and swelling in the previous week. (Tr. 180-181). She also complained of some swelling in her ankles as well as some lesions on both of her ankles. (Tr. 180). Medical personnel observed that Plaintiff was in mild distress, but noted no neurological deficits. (Tr. 181). Plaintiff also had a good range of motion in her lower extremities. *Id.* Medical personnel also observed that Plaintiff moved her upper extremities appropriately and that her strength was intact. *Id.* Plaintiff was treated with medication and was directed to follow-up with her local physician. *Id.*

On August 15, 2006, Plaintiff was examined by Dr. Julie Flick, M.D., at the Baptist Health Family Clinic for a follow-up examination. (Tr. 165-166). Dr. Flick observed only moderate degenerative changes in Plaintiff's left knee. (Tr. 166). Significantly, Dr. Flick observed Plaintiff was moving all of her extremities well and exhibited 4/5 muscle strength throughout. *Id.* She diagnosed Plaintiff with edema and arthralgias and prescribed her Flexeril. *Id.*

On January 18, 2007, five months later, Plaintiff again went to the Baptist Family Health Clinic. (Tr. 153). Medical personnel noted that, while Plaintiff had chronic degenerative changes in her spine, no acute changes were present. *Id.* Further, while Plaintiff had an antalgic gait, she exhibited 5/5 motor strength in both her upper and lower extremities. (Tr. 153-154). Plaintiff's neck also demonstrated movement and a good range of motion. (Tr. 154). On April 18, 2007, Plaintiff presented to Dr. Flick again. (Tr. 149-150). During this appointment, Plaintiff complained to Dr. Flick about multiple ailments. (Tr. 150). Dr. Flick noted that Plaintiff was attempting to do more exercise, including gardening, fishing, and painting. *Id.* Dr. Flick encouraged Plaintiff to increase her non-aerobic exercise and suggested water aerobics or other exercise that was safe for joints. (Tr. 149). She diagnosed Plaintiff with "chronic pain, stable" and instructed her to continue taking her medication. *Id.*

On July 13, 2007, three months later, Plaintiff presented to the emergency room complaining of neck and back pain after cleaning her mother-in-law's house. (Tr. 127-128). Medical personnel diagnosed her with a simple muscle strain. (Tr. 132). Also during this appointment, Plaintiff reported not taking medication for back pain. (Tr. 127). The following month, Plaintiff went to the emergency room again complaining of neck pain. (Tr. 136). An x-ray of Plaintiff's thoracic spine showed no abnormality. (Tr. 143). An x-ray of Plaintiff's cervical spine also revealed no abnormality. (Tr. 144).

7

On December 31, 2007, four months later, after injuring both of her ankles on broken steps, Plaintiff sought treatment from the Baptist Health Medical Center. (Tr. 194). While Plaintiff's ankles demonstrated swelling, she had a range of motion in both ankles. *Id.* Plaintiff was neurovascularly intact, and x-rays of both Plaintiff's ankles were normal. (Tr. 194-197). Medical personnel diagnosed Plaintiff with bilateral ankle sprain, greater on the right than the left. (Tr. 194). Plaintiff was prescribed pain medication, was directed to complete "rest, ice, compression, and elevation," and was directed to follow-up with Dr. Gary P. Gehrki, M.D. if she had not improved in one week. *Id.*

On February 6, 2008, Plaintiff presented to Dr. Gehrki, for pain. (Tr. 212). Dr. Gehrki noted Plaintiff was not taking any prescription pain medication. *Id.* Dr. Gehrki also observed Plaintiff appeared to have good movement in her left shoulder. *Id.* On May 5, 2008, three months later, Dr. Gehrki saw Plaintiff again for complaints about pain in her neck, back, and left shoulder. (Tr. 210). On that date, however, Dr. Gehrki observed that Plaintiff had a full range of motion and normal deep tendon reflexes. *Id.* On May 18, 2009, Plaintiff complained to Dr. Gehrki about increasing pain, and Plaintiff requested medication refills. (Tr. 208). Dr. Gehrki diagnosed Plaintiff with chronic neck and lumbar pain, but Dr. Gehrki also observed Plaintiff had a full range of motion in her neck, Plaintiff's deep tendon reflexes were normal, and Plaintiff's muscle tone was normal. *Id.* Based upon the transcript, there is no indication Plaintiff received treatment for her osteoarthritis after this date. Further, although these records do indicate Plaintiff suffers from some level of chronic pain, none of the medical records outlined above indicate Plaintiff is unable to perform a wide range of light work due to her osteoarthritis. Notably, no physician placed any functional restrictions on Plaintiff's activities that would preclude her from performing a wide range of light work. Indeed, as noted previously, Dr. Flick even encouraged Plaintiff to increase her non-aerobic exercise and suggested water aerobics or other exercise that was safe for joints. (Tr. 149). Accordingly, this Court finds

Plaintiff has not met her burden of establishing she is unable to perform a wide range of light work due to her osteoarthritis.

Second, Plaintiff claims her vision problems prevent her from performing a wide range of light work. ECF No. 7 at 3-8. As an initial matter, however, is important to note that the ALJ accounted for Plaintiff's vision problems in his RFC assessment when he determined Plaintiff could only perform work that did not require good depth perception or good binocular vision. (Tr. 14, Finding 4). Thus, the ALJ did not entirely discount Plaintiff's claim that she suffered from vison problems.

Further, upon review of the medical records, this Court finds Plaintiff has not established her limitations are any greater than those found by the ALJ. Notably, on January 7, 2008, Dr. Covington, O.D. indicated Plaintiff experienced blunt trauma to her left eye at the age of seven. (Tr. 203). He assessed Plaintiff with suspected glaucoma in her right eye and an aphake and corneal scar in her left eye. (Tr. 204). As a part of this appointment, Plaintiff received a new eye glass prescription. (Tr. 204). Plaintiff returned to Dr. Covington two weeks later, and he diagnosed Plaintiff with chronic open angle glaucoma and placed Plaintiff on Xalatan eye drops. (Tr. 205). Records from February 2008 show that Plaintiff's intraocular pressure had decreased. *Id.* Dr. Covington advised Plaintiff to continue with her medication and return for a pressure check-up in three months. *Id.*

In July of 2008, Plaintiff eye pressure had increased, and Dr. Covington switched her to Cosopt eye drops. (Tr. 206). The most recent medical record addressing Plaintiff's eye problems is dated October 27, 2008 and demonstrates Plaintiff's eye pressure had decreased. (Tr. 206). Dr. Covington placed Plaintiff back on Xalatan eye drops and instructed Plaintiff to return in four months. (Tr. 206). This is the last medical record in the transcript addressing Plaintiff's visual limitations. Thus, based upon these records, there is no indication that Plaintiff's vision would prevent her from performing a wide range of light work beyond the limitations found by the ALJ. Accordingly, this Court finds

Plaintiff has not met her burden of establishing she is unable to perform a wide range of light work.

**B.       Credibility Determination**

Plaintiff also claims the ALJ erred in assessing her credibility. ECF No. 7 at 2-8. Again, as with the RFC determination, Plaintiff has not cited to any specific part of the ALJ's opinion that is flawed. *Id.* Instead, Plaintiff merely states that her subjective complaints were consistent with her medical records such that the ALJ improperly discounted her subjective complaints. *Id.* Because Plaintiff has provided no direction on this issue, this Court will independently review the requirements of the ALJ's credibility analysis and determine whether the ALJ performed a proper analysis under *Polaski*.

In assessing the credibility of a claimant, the ALJ is required to examine and to apply the five factors from *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984) or from 20 C.F.R. § 404.1529 and 20 C.F.R. § 416.929.[2] *See Shultz v. Astrue,* 479 F.3d 979, 983 (2007). The factors to consider are as follows: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the functional restrictions. *See Polaski,* 739 at 1322. The factors must be analyzed and considered in light of the claimant's subjective complaints of pain. *See id.*

The ALJ is not required to methodically discuss each factor as long as the ALJ acknowledges and examines these factors prior to discounting the claimant's subjective complaints. *See Lowe v. Apfel,* 226 F.3d 969, 971-72 (8th Cir. 2000). As long as the ALJ properly applies these five factors

---

[2] Social Security Regulations 20 C.F.R. § 404.1529 and 20 C.F.R. § 416.929 require the analysis of two additional factors: (1) "treatment, other than medication, you receive or have received for relief of your pain or other symptoms" and (2) "any measures you use or have used to relieve your pain or symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.)." However, under *Polaski* and its progeny, the Eighth Circuit has not yet required the analysis of these additional factors. *See Shultz v. Astrue,* 479 F.3d 979, 983 (2007). Thus, this Court will not require the analysis of these additional factors in this case.

and gives several valid reasons for finding that the Plaintiff's subjective complaints are not entirely credible, the ALJ's credibility determination is entitled to deference. *See id.*; *Cox v. Barnhart,* 471 F.3d 902, 907 (8th Cir. 2006). The ALJ, however, cannot discount Plaintiff's subjective complaints "solely because the objective medical evidence does not fully support them [the subjective complaints]." *Polaski,* 739 F.2d at 1322.

When discounting a claimant's complaint of pain, the ALJ must make a specific credibility determination, articulating the reasons for discrediting the testimony, addressing any inconsistencies, and discussing the *Polaski* factors. *See Baker v. Apfel,* 159 F.3d 1140, 1144 (8th Cir. 1998). The inability to work without some pain or discomfort is not a sufficient reason to find a Plaintiff disabled within the strict definition of the Act. The issue is not the existence of pain, but whether the pain a Plaintiff experiences precludes the performance of substantial gainful activity. *See Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991).

In the present action, the ALJ performed a full and complete *Polaski* analysis and properly evaluated, considered, and discounted Plaintiff's subjective complaints. (Tr. 14-20). Indeed, in his opinion, the ALJ in this action considered the *Polaski* factors and then gave "good reasons" for discounting Plaintiff's subjective complaints. *Id.* These "good reasons" include the fact Plaintiff was able, during the relevant time period, to perform extensively daily activities such as wash dishes, grocery shop, and do laundry. (Tr. 18). Indeed, in April of 2007, Plaintiff was reportedly exercising and attempting to increase that exercise; in July of 2007, Plaintiff reportedly was cleaning her mother-in-law's house; and in September of 2007, Plaintiff was reportedly running errands with her husband. *Id.* While Plaintiff need not be bedridden to establish her disability, such activities are certainly inconsistent with her alleged level of pain and limitation.

The ALJ also noted that Plaintiff's pain appeared to be controlled with medication. (Tr. 18).

Notably, in January of 2007, Plaintiff reported her pain was controlled with medication and in August of 2007, she reported that once she stopped taking that medication, her pain returned. *Id.* Further, the ALJ noted some of Plaintiff's other medical records were also not consistent with her alleged level of disabling pain. (Tr. 19). The ALJ noted the x-rays Plaintiff underwent showed no boney abnormalities. *Id.* Further, the ALJ found that "[o]ffice notes from several doctors reflected that the claimant was moving all of extremities well; no edema found in her extremities; the claimant had a full range of motion; that her neck seemed to function smoothly; and her muscle tone was normal." *Id.* Thus, because the ALJ provided these "good reasons" for discounting Plaintiff's subjective complaints, the ALJ's credibility determination is entitled to deference. *See Gregg v. Barnhart,* 354 F.3d 710, 714 (8th Cir. 2003) (holding that "[i]f an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination").

### 4. Conclusion:

Based on the foregoing, the undersigned finds that the decision of the ALJ, denying benefits to Plaintiff, is supported by substantial evidence and should be affirmed. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED this 1st day of February, 2011.**

/s/   Barry A. Bryant
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE